IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| K.C.,[1]<br><br>Plaintiff,<br><br>vs.<br><br>Commissioner of Social Security,<br><br>Defendant. | Case No. 3:25-cv-00333-RRB<br><br>**ORDER REMANDING FOR FURTHER PROCEEDINGS (Docket 11)** |

## I. INTRODUCTION

On October 16, 2020, Plaintiff, hereinafter referred to as "Claimant," brought a claim pursuant to Title II of the Social Security Act ("the Act") alleging disability beginning June 19, 2020.[2] Since that date, an Administrative Law Judge ("ALJ") has held two hearings and issued two opinions, both concluding that Claimant is not disabled.

[1] Plaintiff's name is partially redacted pursuant to Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Tr. 332–38. Disability is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if his . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

While the Appeals Council remanded the first decision to the ALJ for rehearing, it denied the request to review the second decision. On April 15, 2025, four and a half years after his initial application, the second ALJ decision became the final decision of the Commissioner.[3]

Having exhausted his administrative remedies, Claimant now seeks relief from this Court. He argues that the ALJ erred in determining that he is not disabled within the meaning of the Act. Claimant requests that the Court reverse the Commissioner's final decision and remand for calculation and award of benefits.[4] The Commissioner has filed brief in opposition and Claimant has replied.[5] For the reasons set forth below, Claimant's Motion for Remand at **Docket 11** is **GRANTED in part**, the Commissioner's final decision is **VACATED**, and the case is **REMANDED** to the SSA for further proceedings.

## II. BACKGROUND

### A. Claimant's Testimony

Claimant alleges that he is disabled primarily due to Crohn's disease.[6] He testified that he cannot work due to several medical conditions which cause back pain, stomach cramps, and frequent urgent bathroom use, sometimes seven or eight times a day. He follows a special diet and has flare-ups and bowel obstructions. He described

[3] Tr. 15–24.

[4] Docket 11.

[5] Dockets 12 & 13.

[6] Tr. 760 (Claimant "identified Crohn's and IBS as the main problems that prevent him from working."). "Crohn's disease is characterized by abdominal pain, loose or liquid bowel movements, and high or increased frequency of bowel movements as well as urgency." Docket 11 at 9–10 (citing Williams-Hall, R., et al., *A qualitative study to explore the symptoms and impacts of Crohn's disease and to develop the Crohn's Disease Diary*, 32 QUAL LIFE RES 209–223 (2023) (available at https://doi.org/10.1007/s11136-022-03233-9).

abdominal pain "every now and then" and testified that he is "allergic to all the medicines that they gave me," but his counsel noted that there was no actual testing.[7] He testified that although he has right-side sciatica pain, he can walk to the bathroom, go to the store, and shower and dress, and do the chores required when living alone.[8] He testified that he can drive unless he is having a "Crone's attack."[9] He occasionally goes to the local bar to socialize, drink beer, and smoke a cigar, and he takes his three dogs out in the backyard.[10]

**B. Medical Evidence**

The medical records are replete with descriptions of Claimant's Crohn's disease and its symptoms, including a history of obstructions, starting in 2016.[11] In 2019 his provider noted that Claimant had a bowel obstruction earlier in the year and spent a few days in the ICU.[12] The physician noted that "the disease process has continued," necessitating medication, and explained that "the disease is not going away and eventually he [will] get totally obstructed," requiring surgery.[13] In 2020, Claimant was hospitalized in the ICU at least twice from complications of a flare of Crohn's disease, which was reportedly getting worse.[14] His physician indicated in November 2020 that surgery was needed for the Crohn's disease, as the "small bowel was quite inflamed and scarred," with "moderate-grade distal small-bowel obstruction," and that Claimant still noted "episodic

---

[7] Tr. 39.
[8] Tr. 47.
[9] Tr. 48.
[10] Tr. 48–49.
[11] Tr. 543, 561, 652–53, 692, 697, 701, 875, 913,
[12] Tr. 701.
[13] Tr. 699.
[14] Tr. 608, 720.

diarrhea and abdominal pain," such that he had "recently quit his job as stress was driving a lot of his symptomatology."[15] A physician at the VA noted "multiple ER and hospital admissions at least since May of 2020," with "no foreseeable resolution," excusing him from working "in any capacity at the present time," pending reevaluation in June 2021.[16] In December 2021, his physician noted symptoms of small bowel obstruction every two weeks.[17] In March 2022, his physician continued to believe "surgery is in his best interest given the stenotic Crohn's disease and episodic obstruction."[18] In April and May 2022, following another unsuccessful trial of medication, Claimant told his physician that he would "deal with it if his bowel ruptures."[19] Claimant reported another bowel obstruction in November 2022.[20]

**C. ALJ Decision**

The ALJ concluded that Claimant suffered from severe impairments, including degenerative disc disease of the lumbar spine, chronic fatigue, gastroesophageal reflux disease, and Crohn's disease, and found that these medically determinable impairments "significantly limit the ability to perform basic work activities as required by SSR 85-28."[21] However, the ALJ found that Claimant's severe impairments did not meet any medical listings.

---

[15] Tr. 584; 636
[16] Tr. 621.
[17] Tr. 882.
[18] Tr. 888,
[19] Tr. 890, 892
[20] Tr. 913.
[21] Tr. 18.

The ALJ assessed Claimant's residual functional capacity ("RFC"), which is the most work someone can do despite their mental and physical limitations.[22] In determining a claimant's RFC, the ALJ must base findings on "all of the relevant medical and other evidence," including a claimant's testimony regarding the limitations imposed by his impairments.[23] The ALJ concluded that Claimant had "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with no more than frequent climbing ramps or stairs, balancing, kneeling; no more than occasional climbing ladders, ropes or scaffolds, stooping. He must avoid concentrated exposure to hazards. He must have access to the bathroom during breaks at work occurring every hour for 5 minutes and at every 15-minute morning and afternoon break and lunch."[24]

The ALJ concluded that Claimant was not able to return to his previous work but, based on the testimony of the vocational expert, an individual of Claimant's age, education, work experience, and residual functional capacity was able to perform other light jobs that exist in significant numbers in the national economy, such as: marker, DOT 209.587-034; routing clerk, DOT 222.687-022; and housekeeping cleaner, DOT 323-014. As such, the ALJ determined that Claimant had not been under a disability, as defined in the Social Security Act from his alleged onset date through the date of the ALJ decision.[25]

---

[22] *Berry v. Astrue*, 622 F.3d 1228, 1233 (9th Cir. 2010); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).
[23] 20 C.F.R. § 404.1545(a)(3).
[24] Tr. 19.
[25] Tr. 23.

## III. DISCUSSION

A decision by the Commissioner to deny disability benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error.[26] Here, the parties agree that the ALJ's decision is inadequate, but they disagree on the appropriate remedy. The Commissioner concedes that the ALJ erred in assessing Claimant's RFC. Claimant argues that this Court should reverse and remand for payment of benefits,[27] while the Commissioner argues that further proceedings are warranted. **Accordingly, the only question before this Court is the nature of the remand.**

With respect to whether this Court should remand for further administrative proceedings or remand for benefits, the Court considers the "credit-as-true" rule dictated by the Ninth Circuit.[28] Further administrative proceedings generally are useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence "may well prove enlightening."[29] The record appears to be fully developed, but the Commissioner argues that there are outstanding issues or factual ambiguities, including whether Claimant's bathroom needs would make him off-task to the point that employment would be precluded.

---

[26] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)). "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Such evidence must be "more than a mere scintilla," but also "less than a preponderance." *Id*. If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452–53 (9th Cir. 1984).

[27] Docket 11.

[28] *See Varney v. Sec'y of Health & Human Servs*., 859 F.2d 1396 (9th Cir. 1988); *Treichler v. Commissioner of Soc Sec. Admin*, 775 F.3d 1090,1100–02 (9th Cir. 2014).

[29] *Treichler,* 775 F.3d at 1101 (citations omitted).

The Court is inclined to agree with the Commissioner. Of particular concern are the internal inconsistencies in the ALJ's analysis. The ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause many of his alleged physical and mental symptoms," noting that "the claimant states that he is unable to perform work-related activities due to the pain, discomfort, and restriction of movement that these conditions have caused," and that he "alleges that his symptoms result in a disabling degree of limitation in the ability to perform any work requirements on a sustained basis."[30] But she then found his allegations "inconsistent with the evidence in the administrative record," which she found supported a residual functional capacity as described above.[31] The ALJ explained that in addition to objective medical evidence from the file:

> [C]laimant's physical activities are also indicative of the limitations imposed by the impairments and their symptoms not being as severe as the claimant alleges. For example, the claimant has no prescribed cane or walker to assist in ambulation. Also, his treatment has been largely conservative despite his claims regarding severity and intensity as he has not undergone surgery on his spine despite his complaints. Further, according to the claimant's function report, the claimant's mobility and stamina are not so restricted as to preclude him from handling personal care activities without any issues, caring for pets, preparing meals, handling household chores, shopping in stores, walking, riding in a car, or visiting with physicians.[32]

[30] Tr. 20.
[31] Tr. 21.
[32] *Id.* (citing 5E/1-10).

Notably missing from this assessment, however, is any discussion of Claimant's primary diagnosis of Crohn's disease. Yet elsewhere the ALJ specifically noted that "the conclusion that the claimant requires ***access to a restroom at all times*** is consistent with the medical record."[33] But this latter finding is, in turn, inconsistent with both the hypothetical presented to the vocational expert and with the RFC which required only "**access to the bathroom during breaks at work occurring every hour for 5 minutes and at every 15-minute morning and afternoon break and lunch**."[34] If the assumptions in a hypothetical are not supported by the record, any vocational expert opinion as to a residual working capacity has no evidentiary value.[35] Accordingly, neither the ALJ nor this Court can rely on the testimony of the vocational expert.

Finally, even if the Court concluded that no outstanding issues remained and found the relevant testimony credible as a matter of law, the Court would then be tasked with determining "whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'"[36] This Court can make no such finding.

In addition to the inconsistencies noted above, which this Court cannot resolve on appeal, the Court notes Claimant's documented refusal to participate in the

---

[33] Tr. 22.

[34] Tr. 19. The expert was asked to allow for "the ability to have access to a . . . bathroom at the workplace . . . at least once every hour for about five minutes. So, we already have the regular 15 minute breaks, one in the morning, one in the afternoon, and the lunch, so two [additional] bathroom breaks, one in the morning and one in the afternoon." Tr. 54.

[35] See *Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir. 1984).

[36] 775 F.3d at 1101 (citations omitted).

current standard of care for Crone's disease.[37] In April 2023, Dr. Charles Portera of Alaska Surgical Oncology noted that Claimant "has foregone standard of care and appears to be managing this with a natural/herbal approach. I am asked to see him regarding surgical management options."[38] At the time, the only supplement or medication Claimant was taking was turmeric powder. Dr. Portera stressed that Claimant should follow the standard of care for Crohn's disease management, which "would incorporate biologic medications to help minimize the [symptoms] and surgery would be reserved for complications of Crohn's disease."[39] Finding Claimant "extremely hesitant regarding medical management secondary to his thoughts and belie[f]s regarding multiple allergies and reactions to medications," Dr. Portera concluded that he had "nothing further to offer this patient as he appears to be resistant to standard of care for management of Crone's disease," including "surgery for what appears to be a stricture of the distal ileum."[40]

Although not discussed in detail by the ALJ or in the briefing, "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" is a factor that may be considered in weighting a claimant's credibility.[41] Claimant has rejected all medication for treatment of his Crone's disease and apparently has not taken advantage of surgical options. The impact of these choices should be addressed by the ALJ, not by this Court.

---

[37] The ALJ also noted this refusal. Tr. 42.
[38] Tr. 924.
[39] Tr. 925.
[40] Tr. 925.
[41] *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007).

The Court finds, for the reasons explained above, that a remand for calculation and payment of benefits is inappropriate. Further development of the record consistent with this order is necessary, and remand for further proceedings is the appropriate remedy.

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Claimant's motion at **Docket 11** is **GRANTED** and this matter is **REMANDED** for further proceedings consistent with this opinion

IT IS SO ORDERED this 3rd day of September, 2026, at Anchorage, Alaska.

*/s/ Ralph R. Beistline*
RALPH R. BEISTLINE
Senior United States District Judge